UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TINI BIKINIS-SAGINAW, LLC,
FREDWARD OF SAGINAW, LLC,
HO-BO PROPERTIES, INC.,  and
PETRICK HOLDINGS-SAGINAW, LLC,

      Plaintiffs,

                                            Case No. 11-10280

v.                                          Honorable Thomas L. Ludington

SAGINAW CHARTER TOWNSHIP,

      Defendant.

_____ /

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS**

      This dispute arises out of the planned opening of a bikini bar.  The case began after a

company that wishes to open an establishment named "Tini Bikinis" was denied a liquor license

by a municipality because, the municipality concluded, the establishment did not comply with

the zoning ordinance prohibiting "adult related" businesses within one thousand feet of property

zoned for residential, educational, and religious purposes.  The company, joined by the current

owners of the real property and the liquor license, as well as the prospective landlord, brought

suit in this Court alleging that the municipality violated the First, Fifth, and Fourteenth

Amendments. Three days later, the municipality amended the zoning ordinance.   The

municipality now moves to dismiss and for judgment on the pleadings, arguing that some claims

are not ripe, that others are moot, and that some of the plaintiffs lack standing to raise some of

the claims.  ECF No. 13.  The Court will grant the motion in part and deny the motion in part,

dismissing all but the facial First Amendment challenge to the amended zoning ordinance

brought by the company and its prospective landlord.

# I.

## A.

At the intersection of Bay Road and Vogue Boulevard in Saginaw Township, a restaurant and bar named "RJ's Grill & Brew" formerly operated.  Compl. ¶ 8, ECF No. 1.  It has been closed for several years.  Property zoned for residential and religious purposes is located less than one thousand feet from RJ's property.

The real property on which RJ's stands is owned by Plaintiff Fredward of Saginaw, LLC, and its liquor license is owned by Plaintiff Ho-Bo Properties, Inc.  *Id.*  ¶¶ 7–8.  In 2010, these two entities entered into a sales agreement with Plaintiff Petrick Holdings-Saginaw, LLC, and Plaintiff Tini Bikinis-Saginaw, LLC.  *Id.*  ¶¶ 7–10.  Pursuant to the agreement, Fredward will transfer the property to Petrick.  *Id.* ¶ 10.  Ho-Bo will transfer the liquor license to Tini Bikinis.  *Id.* ¶ 9.  And Tini Bikinis will operate a "Tini Bikini's Bar and Grill" at the location "featuring female staff that will wear bikinis and that will perform non-obscene, non-nude, live dance entertainment . . . dancing in no less than [b]ikinis."  *Id.* ¶ 14.

Transferring a liquor license under Michigan law, however, requires that both the local legislative body and the Michigan Liquor Control Commission first approve the transfer.  Mich. Comp. Laws § 436.1501(2), *cited in* Compl. ¶ 16.  In 2010, Tini Bikinis requested that the local legislative body of Defendant Saginaw Charter Township, the township board of trustees, approve the transfer.  Compl. ¶ 16.  The issue was addressed at the regular board meeting held on September 13, 2010.  *Id.* ¶ 17; *see also* Compl. Ex. A (board meeting minutes).  By a vote of 7–0, the board of trustees denied the request.  Compl. Ex. A, at 4.  On October 1, 2010, the liquor control commission denied the request as well, explaining: "After review of the unfavorable recommendations from the Saginaw Township Board and the Saginaw Township Police

Department, the Commission concludes that this application should be denied."  Compl. Ex. C, at 3.  On October 25, 2010, Tini Bikinis requested the commission grant Tini Bikinis a hearing to reconsider its decision.  Compl. ¶ 21.  On November 1, the commission responded that a hearing would be "pointless" because § 436.1501 "is clear in its intent of placing an absolute requirement for approval from the local legislative body before a license to sell alcoholic liquor for consumption on the premises can be granted by the Commission."  Compl. Ex. E, at 2, 3.  Plaintiffs did not seek reconsideration by the township board of trustees; instead, they filed suit in this Court.

"The Township opposed the transfer of the License to Bikinis," the complaint explains, "because the township claims Bikinis['] plans to open an 'adult related business,' and that the Location is located within 1,000 feet of property zoned for residential, educational, and religious purposes."  Compl. ¶ 11; *see id.* ¶ 18.  Contesting this characterization, the complaint maintains that "[t]he entertainment Bikinis seeks to present is constitutionally protected expression and does not constitute an 'adult oriented business' under the [local zoning ordinance]."  *Id.* ¶ 19.

Adding a layer of complexity to the dispute, two different versions of the township's zoning ordinance are at issue: (1) the zoning ordinance in place at the time Tini Bikini's application for a liquor license was denied in 2010 ("2010 Ordinance"); and (2) the zoning ordinance now in place ("Amended Ordinance").  Pertinent provisions of each, as well as the amendment process, are examined below.

**B.**

**1.**

Section 2215 of the 2010 Ordinance defines an "adult-related business" in pertinent part as: "Any . . . business having any employee or entertainer . . . displaying any 'specified

-3-

anatomical area' or engaging in any 'specified sexual activity' as defined herein."  Saginaw

Charter Township, Mi., Code of Ordinances § 2215(2)(a) (abrogated Jan. 24, 2011), *attached as*

Compl. Ex. B.  "Specified anatomical areas," in turn, are defined as:

> i) Less than completely and opaquely covered human genitals, pubic region, buttock, female breast below a point immediately above the top of the areola.
> ii) Human genitals in a discernibly turgid state, even if completely and opaquely covered.

*Id*. §§ 2215(2)(i)(i)–(ii).[1]  The 2010 Ordinance prohibits "adult-related businesses" from

operating within one thousand feet of residences, schools, churches, and parks.  *Id.* § 2215(5).

The 2010 Ordinance also provides procedures for changes in use, variances, and appeals.

Regarding changes in use, § 311 of the 2010 Ordinance provides in pertinent part:

> *Site plan review and approval required.* Prior to the . . . change in use in any zoning district, any land use requiring special use approval or any planned unit development, a site plan shall be submitted for review and approval. This review and approval shall be performed by the zoning administrator or by the planning commission. . . .
>
> The applicant shall have the right to appeal from the decision of the township planning commission or administrative site plan review to the township board, whose decision will be final.

Saginaw Charter Township, Mi., Code of Ordinances §§ 311(1), (7) (enacted 2003).  Regarding

variances, § 311 continues:

---

[1] "Specified sexual activities" are defined as:

> i) Human genitals in a state of sexual stimulation or arousal
> ii) Acts of human or animal masturbation, sexual intercourse (homosexual or heterosexual) or sodomy.
> iii) Fondling or erotic touching of human genitals, pubic region, buttock or female breast.
> iv) Bestiality.
> v) Fellatio and cunnilingus
> vi) Human excretory function.

*Id*. §§ 2215(2)(h)(i)–(vi).

> In instances where specific dimensional or area requirements mentioned in the
> zoning ordinance are not satisfied on the site plan, requests for variance(s) may be
> initiated by the applicant to the township zoning board of appeals. . . .

*Id*. § 311(4)(e).  Provisions regarding the board of appeals, in turn, are provided for in § 2304 of

the 2010 Ordinance, which authorizes the board of appeals "to hear appeals concerning":

> (1) All questions that arise in the administration of the zoning ordinance,
>     including interpretation of the zoning map.
> (2) All administrative orders, requirements, decisions or determinations made by
>     an administrative official or body charged with enforcement of the zoning
>     ordinance.
> (3) All decisions of the zoning administrator.
> (4) All decisions concerning site plan review.

Saginaw Charter Township, Mi., Code of Ordinances §§ 2304(3)(B)(1)–(4) (enacted 2006).

Section 2304 continues:

> The appeals board shall base its decision on variances from the strict requirements
> of this Ordinance so that the spirit of the ordinance is observed, public safety
> secured, and substantial justice done . . . .
>
> If the demand for appeal is for a variance the appeals board shall either grant,
> grant with conditions, or deny the application. The appeals board may reverse or
> affirm, wholly or partly, or modify the order, requirement, decision or
> determination and may issue or direct the issuance of a permit.  A majority vote of
> the membership of the appeals board is necessary to grant a dimensional variance
> and rule on an interpretation of the ordinance. The decision shall be in writing and
> reflect the reasons for the decision. . . .
>
> Any person having an interest affected by such decision shall have a right to
> appeal to circuit court within 30 days of the certified decision of the appeals
> board, as provided by law.

*Id*. §§ 2304(3)(G)(2), (H), (I). Unlike § 2215, neither § 311 nor § 2304 have been amended

during the pendency of this action.

## 2.

In November 2010, the township drafted proposed amendments to the 2010 Ordinance.

Compl. ¶ 23.   Proposed changes included modifying "adult-related business" to "sexually

oriented business," defined as: "An adult arcade, adult bookstore, adult novelty store, adult video

store, adult cabaret, adult motel, adult motion picture theater, adult theater, escort agency, nude

model studio, or sexual encounter center." Pls.' Resp. Opp'n Def.'s Mot. Dismiss Ex. F, at 2,

ECF No. 15-7. Each term included in the definition of "sexually oriented business" was also

defined. "Adult cabaret," for example, was defined as:

> A nightclub, bar, restaurant or similar commercial establishment, whether or not
> alcohol is served, which regularly features:
> i) Persons who appear in a state of restricted nudity, lingerie or bikini; and/or
>    other material while opaque does not completely cover the entire buttocks
>    (e.g., g-strings) or all portions of the breast below the topmost portions of the
>    areola; or
> ii) Live performances of an erotic nature which are characterized by the partial
>    exposure of "specific anatomical areas" or "sexually explicit activities" that
>    occur away from the common area of the establishment, such as on stage, on
>    poles, in booths, cubicles, rooms, compartments or stalls separate from the
>    common areas of the premises . . . .

*Id*. at 3–4. "Sexually explicit activities" (renamed from "specified sexual activities") were

expanded to include, inter alia, "[a]ny activity intended to arouse, appeal to or gratify a person's

lust, passions or sexual desires." *Id*. at 8.

Following a public hearing in December 2010, at which counsel for Tini Bikinis testified,

the township board voted to adopt a revised version of the amendments to its code of ordinances,

effective January 24, 2011 (i.e., the Amended Ordinance). *See* Pls.' Resp. Opp'n Def.'s Mot.

Dismiss 9, ECF No. 15 ("Pls.' Br."); *see also* Def.'s Br. Supp. Mot. Dismiss 2–3, ECF No. 13

("Def.'s Br.").

### 3.

The Amended Ordinance adopts, with some revisions, the proposed amendments. For

example, the definition of an "adult cabaret" omits reference to "lingerie [and] bikini[s]," and

instead provides that an "adult cabaret" is defined as:

A nightclub, bar, restaurant or similar commercial establishment, whether or not alcohol is served, which regularly features:

i) Persons who appear in a state of restricted nudity, and/or other material while opaque does not completely cover the entire buttocks (e.g., g-strings) or all portions of the breast below the topmost portion of the areola;[2] or

ii) Live performances of an erotic nature which are characterized by the partial exposure of "specified anatomical areas" or "sexually explicit activities" that occur away from the common area of the establishment, such as on a stage, on poles, in booths, cubicles, rooms, compartments or stalls separate from the common areas of the premises . . . .

Saginaw Charter Township, Mi., Code of Ordinances §§ 202(82)(c)(i)–(ii) (effective Jan. 24, 2011). "Restricted nudity" is not a defined term. But "semi-nude" is — defined as "[a] state of dress in which clothing covers no more than the genitals, pubic region and areola of the female breast, as well as portions of the body covered by supporting straps or devices." *Id*. § 202(82)(z).

The definition of "sexually explicit activities" was not revised from the proposed amendments; instead, it is adopted verbatim to include, inter alia, "[a]ny activity intended to arouse, appeal to or gratify a person's lust, passions or sexual desires."[3] *Id*. §§ 202(82)(bb)(iv).

Section 2215 is substantially revised; it now requires "sexually oriented businesses" apply for a special land use permit, providing in pertinent part: "A sexually oriented business site

---

[2] This definition essentially restates a substantial portion of the former definition of "specified anatomical areas," defined in the 2010 Ordinance as: "Less than completely and opaquely covered human genitals, pubic region, buttock, female breast below a point immediately above the top of the areola." *See* Saginaw Charter Township, Mi., Code of Ordinances § 2215(2)(i)(i) (abrogated Jan. 24, 2011).

[3] In full, "sexually explicit activities" is defined to include:

i)    The fondling or other erotic touching of human genitals, pubic region, buttocks, anus or female breasts; or

ii)   Sex acts, normal or perverted, actual or simulated, including, but not limited to, intercourse, oral copulation or sodomy; or

iii)  Masturbation, actual or simulated; or

iv)   Any activity intended to arouse, appeal to or gratify a person's lust, passions or sexual desires; or

v)    The display of human genitals in a state of sexual stimulation, arousal or tumescence; or

vi)   The display of excretory function as part of or in connection with any of the activity set forth . . . above.

*Id*. §§ 202(82)(bb)(i)–(vi).

shall only be located within a zoning district where it is listed as an allowable use after special approval." *Id*. § 2215(4)(b). Explaining why the heightened regulation is necessary, the Amended Ordinance provides:

> It is recognized that there are some uses, which because of their very nature, have serious objectionable operational characteristics, particularly when several of them are concentrated under certain circumstances thereby having a deleterious effect upon the adjacent areas. Special regulation of these uses is necessary to ensure that these adverse effects will not contribute to the blighting or downgrading of the surrounding neighborhood. . . . The primary control or regulation is for the purpose of preventing a concentration of these uses in any one area that would create such adverse effect(s). It is further the intent of these regulations that these uses only be permitted as special land uses.
>
> Sexually oriented businesses . . . shall be subject to the regulations of this chapter.

*Id*. §§ 2215(1)–(2) (internal citations omitted). Section 2202, in turn, provides the procedures for applying for a special use permit. Applications shall be submitted to the zoning administrator, who shall forward it to the planning commission. *Id*. §§ 2202(1), (3). The planning commission will publish notice of the application, hold a public hearing, make a recommendation and forward it on to the township board. *Id*. § 2202(3).

> *Legislative body action*. Upon receipt of the planning commission recommendation, the local legislative body shall consider the special use permit application at its next regular meeting. The local legislative body shall approve or disapprove the recommendation of the planning commission, and only upon approval of the legislative body may a special use permit be issued by the zoning administrator. . . .
>
> *Effect of denial*. An applicant who has been denied a special use permit may file an action challenging that denial in a court of competent jurisdiction.

*Id*. § 2202(4), (7). From the record, it is not clear which of the "special use" procedures established in § 2202 (if any) were modified pursuant to the amendments adopted on January 24, 2011. In contrast, it is clear that the Amended Ordinance did not modify the provisions

regarding variances and the "board of appeals" process discussed above.  *See* Saginaw Charter Township, Mi., Code of Ordinances §§ 311, 2304 (enacted 2003, 2006 respectively).

## C.

On January 21, 2011, three days before the Amended Ordinance took effect, Plaintiffs filed a § 1983 suit in this Court alleging Defendant violated Plaintiff's First, Fifth, and Fourteenth Amendment rights.  Regarding the First Amendment claims, the complaint alleges, for example:

> The Current Regulations and the Proposed Amendment are unconstitutional violations of the First Amendment[] to the United States Constitution, facially and as applied, because they prevent or require a special use permit for the presentation of certain kinds of dancing, which is constitutionally protected expression.

> The Current Regulations and the Proposed Amendment chills speech by significantly reducing the available land for an "adult oriented" or "sexually oriented" business as they are defined, thereby preventing such businesses a reasonable opportunity to open and operate by essentially creating a ban on such establishments.

> The Current Regulations and the Proposed Amendment are unconstitutional, facially and as applied, because they are not the least restrictive means of regulating any condition or situation which might reasonably be regulated by the township and its definitions of "adult-oriented" and "sexually-oriented" businesses are overbroad.

> The Current Regulations and Proposed Amendment are unconstitutionally vague.

Compl. ¶¶ 33, 34, 37, 50.  Elaborating on Plaintiffs' Fifth Amendment claims, the complaint alleges:

> The Township's refusal to approve the transfer of the License is a deprivation of Plaintiffs' lawful use of property, without due process of law and without just compensation, under the Constitution of the United States.

> The refusal of the Township to approve the transfer constitutes a taking of Plaintiffs' property without just compensation and without due process of law.

Compl. ¶¶ 40, 44.  And discussing Plaintiffs' Fourteenth Amendment claims, the complaint alleges:

> The Current Regulations and Proposed Amendment violate the equal protection clause of the Fourteenth Amendment to the United States Constitution by creating and permitting uneven treatment in the exercise of constitutionally protected rights in the State of Michigan by allowing standards to vary from city to city, township to township, village to village, county to county, in the issuances of licenses and permits to engage in expression that is constitutionally protected by permitting differing treatment among people desiring to engage in constitutionally protected expression.
>
> The refusal of the Township to approve the transfer violates Plaintiffs' substantive and procedural due process rights and further deprives Plaintiffs of their right to engage in constitutionally protected activities.

Compl. ¶¶ 45, 49.

Defendant now moves to dismiss and for judgment on the pleadings pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c).  ECF No. 13.  Arguing that some of Plaintiffs' claims are not ripe, others are moot, and that some Plaintiffs lack standing to raise some of the claims, Defendant seeks to dismiss the complaint.

## II.

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may be based on either a facial attack or a factual attack on the allegations of the complaint.  *Tri-Corp Mgmt. Co. v. Praznik*, 33 F. App'x 742, 745 (6th Cir. 2002). When the Court reviews a factual attack on subject matter jurisdiction, no presumption of truthfulness applies to the factual allegations of the complaint.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  The Court may rely on affidavits or any other evidence properly before it and has wide latitude to collect evidence to determine the issue of subject matter jurisdiction. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986).  A plaintiff must demonstrate

jurisdiction in order to survive the motion.  *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

When a complaint is attacked by a Rule 12(c) motion for judgment on the pleadings, a district court "must read all well-pleaded allegations of the complaint as true."  *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997).  This assertion does not hold true, however, for legal conclusions, including legal conclusions couched as factual allegations, or for unwarranted factual inferences.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 405–06 (6th Cir. 1998).  "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  The requirement is meant to provide the opposing party with "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (quoting *Conley v. Gibson*, 355 U.S. 42, 47 (1957).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft*, 129 S. Ct. at 1949 (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 570).  "Facial plausibility" requires the plaintiff to include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

## III.

### A.

Defendant argues that the First Amendment claims should be dismissed for three reasons — ripeness, mootness, and standing.  Specifically, Defendant argues that Plaintiffs' First Amendment challenge to the Current Ordinance is not ripe, Plaintiffs' First Amendment

challenge to the 2010 Ordinance is moot, and, moreover, Ho-Bo, Fredward, and Petrick lack standing to bring any First Amendment claims in this case. Each argument is considered in turn.[4]

## 1.

"Congress shall make no law," the First Amendment provides in pertinent part, "abridging the freedom of speech." U.S. Const. amend. I. "The jurisdiction of federal courts," however, "is limited by Article III of the United States Constitution to consideration of actual cases and controversies." *Bigelow v. Mich. Dep't Natural Res.*, 970 F.2d 154 (6th Cir. 1992) (quoting *Adcock v. Firestone Tire and Rubber Co.*, 822 F.2d 623, 627 (6th Cir. 1987)).

"Ripeness doctrine originates from the Constitution's Article III requirement that the jurisdiction of the federal courts be limited to actual cases and controversies." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009) (internal alterations and quotation marks omitted) (quoting *Elend v. Basham*, 471 F.3d 1199, 1204–05 (11th Cir. 2006)). "Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Bigelow*, 970 F.2d 154 (quoting *S. Pac. Transp. Co. v. City of L.A.*, 922 F.2d 498, 502 (9th Cir. 1990)).

---

[4] As a threshold matter, however, it should first be noted that it is not obvious from Plaintiffs' brief that they maintain that both the 2010 Ordinance and the Amended Ordinance violate Plaintiffs' First Amendment rights. That is, although the complaint expressly brings First Amendment claims for both the 2010 Ordinance and the proposed amendments, Plaintiffs' brief may reasonably be interpreted as waiving their First Amendment claim regarding the 2010 Ordinance. *See* Pls.' Br. 2–3, 15–17. For example, in their brief Plaintiffs write: "Defendant erroneously asserts that Plaintiffs' claims are moot because the Township revised its zoning ordinance after Plaintiffs commenced this action. However, Plaintiffs are also challenging the revised ordinance in this action." Pls.' Br. 2–3. "Bikinis and Petrick have standing to pursue their claims," Plaintiffs elaborate, "because the Township's new ordinance has the effect of deterring them from engaging in constitutionally protected speech at the property, in violation of the First Amendment." *Id.* at 17. These arguments may reasonably be interpreted to implicitly concede that Plaintiffs are no longer pursuing a First Amendment claim based on the 2010 Ordinance. Other arguments, however, are more ambiguous. For example, Plaintiffs write that they "are challenging the new ordinance, which disadvantages Plaintiffs more than the old ordinance. It specifically targets and outlaws the very entertainment Plaintiffs planned to offer at the property. Thus, Plaintiffs' First Amendment claims against the new ordinance are also ripe and any challenges relating to the old ordinance are not moot." Pls.' Br. 15. Read in the light most favorable to Plaintiffs, this passage suggests that they are maintaining First Amendment claims regarding both ordinances. Accordingly, Plaintiff's claims regarding both are analyzed below.

As a general matter, ripeness is evaluated according to three factors: "(1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings." *Insomnia Inc. v. City of Memphis*, 278 F. App'x 609, 612 (6th Cir. 2008) (internal alterations omitted) (quoting *Warshak v. United States*, 490 F.3d 455, 467 (6th Cir. 2007)).

But for a particular class of cases — regulatory takings cases — the Supreme Court has articulated a more specific formulation of ripeness. In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), the Court established a two-pronged test.

> First, for a plaintiff to successfully advance a claim that governmental action amounts to a regulatory taking, the "governmental entity charged with implementing the regulations must have reached a final decision regarding the application of the regulations to the property at issue." In addition to this finality requirement, a takings claim only becomes ripe for review when the plaintiff "seeks compensation through the procedures the State has provided for doing so."

*Insomnia*, 278 F. App'x at 612 (internal citation and alterations omitted) (quoting *Williamson*, 473 U.S. at 186, 194). As the Sixth Circuit explains: "The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Thus, the State's action is not 'complete' in the sense of causing a constitutional injury 'unless or until the State fails to provide an adequate postdeprivation remedy for the property loss.' " *Montgomery v. Carter Cnty.*, 226 F.3d 758, 765 (6th Cir. 2000) (quoting *Williamson*, 473 U.S. at 192–93).

Although "*Williamson* finality" arises out of the elements of a takings claim — there is no taking unless just compensation is denied — the Sixth Circuit has extended its application "beyond claims of regulatory takings to various other constitutional claims arising out of land

-13-

use disputes." *Insomnia*, 278 F. App'x at 613 (collecting cases); *see also Miles Christi Religious Order v. Township of Northville*, 629 F.3d 533, 537 (6th Cir. 2010) (same). The range of constitutional claims arising out of land use disputes now subject to *Williamson*'s finality requirements include, inter alia, "takings claims, substantive due process claims, and equal protection claims."[5]  And crucially for present purposes, in *Insomnia* this list was expanded to include First Amendment claims. 278 F. App'x at 615 (holding that "contrary to Plaintiffs' assertion, the finality requirement is applicable to the [as applied] First Amendment claim at issue").

*Insomnia* began when a corporation filed an application to subdivide eight acres of land in Memphis into three parcels "in order to facilitate the construction of a restaurant, nightclub, and billboard on each respective subdivision." 278 F. App'x at 610. After the Memphis land use control board rejected the application, the corporation and its two owners appealed to the Memphis city council, which also rejected the application; suit in federal court followed, with the plaintiffs alleging violations of the First and Fourteenth Amendments. *Id.* "Specifically, Plaintiffs maintain[ed] that Defendants denied their application to subdivide their land into three parcels out of hostility to [one of the owner's] involvement in the adult entertainment industry and a concern that the land would be used for the purposes of adult entertainment." *Id.* Based on *Williamson*, the district court concluded the claims were not ripe, noting that the board did not outright deny the application, but rather "instructed the Plaintiffs to resubmit their planned development in more specific detail." *Insomnia Inc. v. City of Memphis*, No. 05-2695, 2006 WL 3759895, at *3 (W.D. Tenn. Dec. 19, 2006), *aff'd*, 278 F. App'x 609 (6th Cir. 2008). Affirming,

---

[5] "In fact," the Sixth Circuit observed in *Insomnia*, "the only type of case in which we have not imposed the finality requirement on constitutional claims arising out of land use disputes is that which presents a purported violation of procedural due process." 278 F. App'x at 614.

the Sixth Circuit looked to a line of Second Circuit decisions in which that court had "elected to

impose the finality requirement on a land use matter presenting First Amendment claims."  278

F. App'x at 615 (citing *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342 (2d Cir. 2005)).

Finding the Second Circuit's rationale persuasive, the Sixth Circuit explained that applying

*Williamson* finality requirements to the First Amendment claim at issue promoted three policy

considerations:

> First, waiting until Plaintiffs file a plan for a proposed development before
> undertaking federal review will ensure "the development of a full record."
> Second, as explained above, if Plaintiffs' revised proposal is approved, they
> will obtain "the relief they seek without requiring judicial entanglement in
> constitutional disputes." Lastly, the district court evinced its respect for
> "federalism principles" by recognizing that "land use disputes are uniquely
> matters of local concern more aptly suited for local resolution."

278 F. App'x at 616 (internal alterations omitted) (quoting *Murphy*, 402 F.3d at 348); *see also*

*Dubuc  v. Township of Green Oak*, 406 F. App'x 983, 990 n.9 (6th Cir. 2011) (enumerating four

policy considerations that underlie the extension of the *Williamson County* finality requirement

to constitutional claims arising in land use disputes).

In *Murphy*, in turn, the plaintiffs hosted large, weekly prayer meetings in their home.  402

F.3d at 344–45.  The town, citing its zoning ordinance which prohibited "hosting regularly

scheduled meetings exceeding twenty-five non-familymembers," issued a cease and desist order.

*Id*. at 344.  Instead of appealing to the zoning board, the plaintiffs brought suit in federal court

alleging, inter alia, a First Amendment violation.  *Id*. at 345.  Evaluating whether the claim was

ripe, the court asked two questions: "(1) whether the [plaintiffs] experienced an immediate injury

as a result of [the town's] actions and (2) whether requiring the [plaintiffs] to pursue additional

administrative remedies would further define their alleged injuries."  *Id*. at 351.  After evaluating

these questions, the court held "As the *Williamson County* Court held, failure to pursue a

variance prevents a federal challenge to a local land use decision from becoming ripe." *Id.* at 352 (citing *Williamson*, 473 U.S. at 190). "This is so," the court concluded "because through the variance process local zoning authorities function as flexible institutions; what they take with the one hand they may give back with the other. Not pursuing a variance thus leaves undetermined the permitted use of the property in question." *Id.* at 353 (internal citation and quotation marks omitted) (quoting *MacDonald, Sommmer & Frates v. Yolo Cnty.*, 477 U.S. 340, 350 (1986)).

Facial challenges to zoning ordinances, in contrast to as applied challenges, are not subject to the *Williamson* finality requirement. *See e.g.*, *San Remo Hotel v. City of S.F.*, 545 U.S. 323, 325 (2005) ("[P]etitioners have overstated *Williamson County*'s reach throughout this litigation. Because they were never required to ripen in state court their claim that the city ordinance was facially invalid for failure to substantially advance a legitimate state interest, they could have raised the heart of their facial takings challenges directly in federal court." (internal citation omitted) (citing *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992)); *see also Rondigo, L.L.C. v. Casco Twp.*, 330 F. App'x 511, 519 (6th Cir. 2009) ("Where a plaintiff challenges a zoning regulation 'as applied,' as opposed to making a facial challenge to the regulation, the courts have held that the *Williamson* final decision requirement must be met." (internal citation omitted) (quoting *Seguin v. City of Sterling Heights*, 968 F.2d 584, 588 (6th Cir. 1992)).

This distinction is logical. "Facial challenges are exempt from the first prong of the *Williamson* ripeness analysis because a facial challenge by its nature does not involve a decision applying the statute or regulation." *Cnty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 167 (3d Cir. 2006) (quoting *Hacienda Valley Mobile v. Morgan Hill,* 353 F.3d 651, 655 (9th Cir. 2003)). Facial challenges "seek to leave nothing standing — to prevent any application of the law no matter the setting, no matter the circumstances." *Thomas More Law Ctr, v. Obama*, 651

F.3d 529, 556 (6th Cir. 2011) (Sutton J., concurring) (quoting *Warshak v. United States*, 532 F.3d 521, 528 (6th Cir. 2008) (en banc)).  A facial challenge "require[es] the plaintiff to establish no set of circumstances exists under which the Act would be valid."  *Id.* (internal quotation marks omitted) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).  Accordingly, because the facial challenge is premised on the idea that regardless of how the statute is applied, it will be unconstitutional, no final decision of the local government applying the particular ordinance to a specific set of facts is necessary to evaluate its constitutionality.

In this case, Plaintiffs bring both as applied and facial First Amendment challenges to the Amended Ordinance (and 2010 Ordinance, which is discussed in the following section).  *See* Compl. ¶¶ 33, 34, 37, 39, 48, 50.  Because the challenges spring from a land use dispute, however, Plaintiffs' as applied challenge to the Amended Ordinance must satisfy the *Williamson* requirements.  It has not done so.  The complaint does not allege that Plaintiffs have sought a decision from any of the governmental entities charged with implementing the Amended Ordinance — not the zoning administrator, not the planning commission, not the township board, and not the township board of appeals.  Accordingly, none of these entities have made a decision regarding the application of the regulations to the property at issue, much less a final decision.[6] Consequently, Plaintiffs' as applied First Amendment challenge to the Amended Ordinance is not ripe for federal review.

Plaintiffs, arguing against this conclusion, contend that "exhaustion of state administrative remedies is not a prerequisite to an action under § 1983."  Pls.' Br. at 13 (internal alterations omitted) (quoting *Outdoor Media Grp. v. City of Beaumont*, 506 F.3d 895, 900 (9th

---

[6] Indeed, Plaintiffs could not have done so — they brought suit before the Amended Ordinance was enacted.

Cir. 2007)).  Their argument is unpersuasive.  Such an argument was squarely raised — and rejected — in *Williamson*, in which the Court explained:

> [T]here is no requirement that a plaintiff exhaust administrative remedies before bringing a § 1983 action. The question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable. While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.

473 U.S. at 192 (internal citations omitted); see also *Montgomery*, 226 F.3d at 765 ("In holding that the tract owner's claim was not ripe, the Supreme Court took pains to distinguish the concept of finality from the somewhat related but distinct concept of exhaustion of state remedies.").  Exhaustion is not required for as applied challenges. Finality, however, is.[7] Plaintiffs' as applied First Amendment challenge to the Amended Ordinance is not ripe.

In contrast, Plaintiff's facial challenge to the Amended Ordinance is ripe for federal review.  In fact, Defendant concedes that as a general matter "a facial challenge is not subject to the finality requirement."  Def.'s Reply Br. 3, ECF No. 17.  Defendant nevertheless argues that Plaintiffs' claim is not ripe because they are only challenging "language from the proposed amendment which was removed from the version which the Township Board adopted."  *Id*. Defendant's argument is unpersuasive.  Although the complaint does reference proposed amendments that were not ultimately adopted verbatim, it also references a number of proposed

---

[7] Illustrating the soundness of the Sixth Circuit's holding in *Insomnia* rule are Plaintiffs' claimed damages in this case.  "Because of the unconstitutional failure of the Township to approve the transfer of the License," the complaint alleges, "Plaintiffs have suffered significant and substantial damages, including, but not limited to, loss of earnings, lost business profits, loss of business reputation and good will, and lost business opportunities."  Compl. ¶ 53.  These alleged injuries, of course, are not distinguishable based on whether the claim is styled as a First Amendment violation or a Fifth Amendment regulatory takings claim.  (Plaintiffs concede that Tini Bikinis is a "sexually oriented business" under the Amended Ordinance).

amendments that were, as well as amendments that were adopted with minor revisions. For example, the definition of "sexually explicit activities" was not revised from the proposed amendments; instead, it was adopted verbatim to include, inter alia, "any activity intended to arouse, appeal to or gratify a person's lust, passions or sexual desires." *Compare* Compl. ¶ 25, *with* Saginaw Charter Township, Mi., Code of Ordinances § 202(82)(dd)(iv) (effective Jan. 24, 2011). Plaintiffs' facial challenge to the Amended Ordinance is ripe for judicial review.

Plaintiffs also bring First Amendment challenges to the 2010 Ordinances, an issue taken up next.

## 2.

"Generally, when an ordinance is repealed any challenges to the constitutionality of that ordinance become moot." *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1310(11th Cir. 2000). *Cf. Giovani Caradola, Ltd. V. Fox*, 396 F. Supp. 630, 635–36 (M.D.N.C. 2005), *rev'd on other grounds*, 470 F.3d 1074 (4th Cir. 2006) ("In this case [N.C. Gen. Stat.] § 18B-1005 and its accompanying administrative Rule were repealed. There is no threat that they will be reenacted . . . because the General Assembly has already passed a new, amended version of the old statute. There is no need to address the old statute when the newer version is also before the Court. . . . Entering a declaratory judgment on the validity of the old statute would be an improper advisory opinion, and therefore counts I, II, III, and IV of Plaintiffs' Second Amended Complaint are dismissed as moot." (internal citation omitted)).

Merely repealing objectionable language while a suit is pending, however, does not necessarily moot the case — "if that were the rule, a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect." *Ne. Fla. Chapter of Associated General Contractors of Am. v. City of Jacksonville*, 508 U.S. 656,

662 (1993); *cf. City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.").

Generally, however, courts distinguish between claims seeking declaratory and injunctive relief, which may be mooted by the repeal of a statute, and claims seeking monetary relief, which generally are not mooted. In *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830 (6th Cir. 2004), for example, the ordinance required "adult bookstores" apply for conditional use licenses from the local board. *Id*. at 833. Alleging that this zoning scheme unconstitutionally restricted their First Amendment rights because it gave the board "unbridled discretion," adult bookstore owners brought suit. *Id*. The following month, the board amended the ordinance so that "adult bookstores would no longer have to seek approval from the board." *Id*. at 833–34. The district court dismissed the plaintiffs' claim for injunctive relief regarding the repealed conditional use procedure as moot. Affirming, the Sixth Circuit explained: "We can neither declare unconstitutional nor enjoin the enforcement of a provision that is no longer in effect." *Id*. at 836. Significantly, however, the court further held that, notwithstanding the amendment, the plaintiffs' claim for money damages was not moot. *Id*. Rather, the plaintiffs could seek damages for losses caused by the enforcement of the challenged ordinance before it was amended. *Id*.

In this case, as in *Brandywine*, Plaintiffs' First Amendment claim for injunctive and declaratory relief regarding the 2010 Ordinance is moot. Indeed, declaring a repealed ordinance void and enjoining its enforcement — particularly when the current ordinance is also before the Court — would be an empty act. In the vernacular, declaring it void would be as meaningful as

-20-

shooting a dead horse. And enjoining its enforcement, moreover, would be shooting the horse once again.

In contrast, Plaintiffs' as applied claim for monetary relief is not moot. Rather, its jurisdictional defect is just the opposite — it is not ripe. That is, Plaintiffs have not satisfied both prongs of *Williamson* for their challenge to the 2010 Ordinance. Although Plaintiffs received a final decision from the township board on September 13, 2010, they did not seek compensation in state court. *See* Compl. Ex. A, at 4 (board meeting minutes); *see also* Saginaw Charter Township, Mi., Code of Ordinances § 311(7) (enacted 2003) ("The applicant shall have the right to appeal from the decision of the township planning commission or administrative site plan review to the township board, whose decision will be final."). The board's decision satisfies the first prong of *Williamson*. It does not, however, satisfy the second prong.

Although not immediately obvious under existing Sixth Circuit precedent that Plaintiffs must satisfy both prongs of *Williamson* for a First Amendment claim, the weight of authority suggests that they must because their claim is ancillary to their takings claim. To elaborate, the Sixth Circuit precedent is not altogether uniform on whether all claims arising out of land use disputes must satisfy both of *Williamson*'s prongs. One line of cases holds that the second prong applies "only to an action for just compensation or inverse or reverse condemnation." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 518 (6th Cir. 2004); *cf. Murphy*, 402 F.3d at 352 ("[W]e conclude that it is appropriate to apply *Williamson County*'s prong-one finality requirement to each of the [plaintiffs'] claims.").

A longer line of Sixth Circuit authority, however, holds that "ancillary claims" — "claims that are ancillary to taking claims" — "are subject to the same *Williamson* ripeness requirements." *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002) (citing *Bigelow v. Mich.*

*Dep't of Natural Res.*, 970 F.2d 154, 157 (6th Cir. 1992)); *see generally* Stephen Abraham,

*Williamson County Fifteen Years Later When is a Takings Claim (Ever) Ripe?* 36 Real Prop.

Prob. &Tr. J. 101, 125 (2001) (noting that "[t]he courts are less than unanimous regarding how

ancillary (but not derivative) claims are to be treated for ripeness purposes").

     Still another line of cases holds that when the takings claim is "private use" rather than

"public use" claim, neither prong of *Williamson* applies.  In *Montgomery v. Carter County*, 226

F.3d 758 (6th Cir. 2000), for example, the plaintiff brought suit in federal court, alleging that the

county had taken her property for a private use. *Id.* at 767.  Concluding the claim was ripe, the

court explained:

> Requiring a plaintiff to wait before suing in federal court, when her sole claim is
> that she was dispossessed of property for a private use, would have only one
> apparent purpose — to force the plaintiff to vet her claims in state proceedings
> (such as a state court declaratory judgment action to quiet title, as the county
> defendants have suggested) before the claims can be aired in federal court.  But
> forcing the plaintiff to pursue state "remedial" procedures would be an exhaustion
> requirement, a requirement that *Williamson County* explicitly does not impose.

*Id.* (citing *Williamson*, 473 U.S. at 193–94); *accord Rumber v. District of Columbia,* 487 F.3d

941, 944 (D.C. Cir. 2007); *McKenzie v. City of White Hall*, 112 F.3d 313, 317 (8th Cir. 1997);

*Armendariz v. Penman*, 75 F.3d 1311, 1320–21 & n. 5 (9th Cir. 1996) (en banc); *Samaad v. City

of Dallas*, 940 F.2d 925, 936–37 (5th Cir. 1991); *but see Forseth v. Village of Sussex*, 199 F.3d

363, 373 (7th Cir. 2000) (holding that claim that taking was for private purpose was not ripe

because plaintiffs "failed to utilize their state law remedies").

     In contrast, when the gravamen of the complaint is a quintessential regulatory takings

claim, the "ancillary claims" are "not ripe for review unless the plaintiff has met the two

elements [of *Williamson*]."  *Arnett*, 281 F.3d at 562 (citing *Bigelow*, 970 F.2d at 158–60).  To

evaluate whether a claim is ancillary, the court "focuse[s] on the circumstances of the specific

case — and particularly the issue of when the alleged injuries occurred." *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 572 (6th Cir. 2008). If a claim "addresses a separate injury," it is not ancillary. *Warren v. City of Athens*, 411 F.3d 697 (6th Cir. 2005).[8]

In this case, Plaintiffs' First Amendment claim for monetary damages regarding the 2010 Ordinance arises out of the same injury as Plaintiffs' just compensation claim — the deprivation of the use of the property in the Fall and Winter of 2010. *See generally Daskalea v. Wash. Humane Soc'y*, 719 F. Supp. 32 (D.D.C. 2010) (discussing monetary damages for facial challenges). Specifically, the complaint's Fifth Amendment challenge asserts that "[t]he refusal of the Township to approve the transfer constitutes a taking of Plaintiffs' property without just compensation and without due process of law." Compl. ¶ 44. The as applied First Amendment challenge asserts that "[t]he Township's refusal to approve the transfer of the license was taken under the color of law and deprives Plaintiff the right to engage in constitutionally protected speech." *Id.* ¶ 39. "Because of the unconstitutional failure of the Township to approve the transfer of the License," the complaint elaborates, "Plaintiffs have suffered significant and substantial damages, including, but not limited to, loss of earnings, lost business profits, loss of business reputation and good will, and lost business opportunities." *Id.* ¶ 53. As the damages for the as applied First Amendment challenge are indistinguishable from the takings claim, the as applied challenge to the 2010 Ordinance is an "ancillary claim." Because Plaintiffs have not sought compensation through the procedures that the State has provided for doing so, their claim for monetary damages regarding the 2010 Ordinance is not ripe for judicial review.

---

[8] As an aside, it should be noted that the Sixth Circuit has not yet had occasion to extend its ancillary claim jurisprudence to First Amendment claims in land use cases. In light of the court's holding in *Insomnia*, however, in which the court focused on the policy considerations that underlie the extension of the *Williamson County* finality requirement to other types of constitutional claims arising in land use disputes, it appears likely that the court would extend the ancillary claim analysis to purported First Amendment violations which arise out of the same nucleus of facts as a taking claim.

In sum, this Court lacks jurisdiction over Plaintiffs' claims regarding the 2010 Ordinance. The claims for declaratory and injunctive relief regarding the repealed provisions of this ordinance are moot. The claim for monetary damages is not ripe. Before turning to Plaintiffs' other claims, however, one further jurisdictional argument of Defendant regarding Plaintiffs' First Amendment claim must be addressed, standing.

**3.**

Standing has both constitutional and prudential requirements. *Royal Oak Entm't, LLC v. City of Royal Oak*, 205 F. App'x 389, 396 (6th Cir. 2006) (citing *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 332 (6th Cir. 2002)). As a general matter, to satisfy the constitutional requirement of Article III, "the plaintiff must show that he has suffered an invasion of a legally protected interest that is concrete, particularized, and actual or imminent; that there is a causal connection between the injury and the challenged conduct; and that a favorable decision by the court is likely to redress the plaintiff's injury." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "Case law has also created three prudential requirements: that the plaintiff assert his own interests and not the interests of others, that the claim be more than a general grievance, and, in cases where the plaintiff complains about a statute, that the claim fall within the 'zone of interests' regulated by the statute." *Id.*

These general standing requirements, however, have been modified for First Amendment cases. For example, "the Court has altered its traditional rules of standing to permit — in the First Amendment area — attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973) (internal quotation marks omitted) (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)).

"Although there is broad latitude given facial challenges in the First Amendment context," the Sixth Circuit cautions, "a plaintiff must establish that he has standing to challenge each provision of an ordinance by showing that he was injured by application of those provisions." *Midwest Media Prop., L.L.C. v. Symmes Twp.*, 503 F.3d 456, 464 (6th Cir. 2007) (quoting *Covenant Media of S.C., L.L.C. v. City of N. Charleston*, 493 F.3d 421, 429–30 (4th Cir. 2007)).

In this case, Defendant argues that Ho-Bo, Fredward, and Petrick have asserted First Amendment claims "based on the allegation that [Tini Bikinis] intended to provide non-obscene, non-nude, live dancing entertainment to its adult patrons. These Plaintiffs do not possess standing to assert the First Amendment . . . rights of [Tini Bikinis]." Def.'s Br. 16. Plaintiffs concede that Ho-Bo and Fredward lack standing to bring First Amendment claims, but argue that Petrick does have standing as the potential purchaser of the real property. Pls.' Br. 17.

Plaintiffs are correct. Petrick, as the prospective landlord who has entered into a purchase agreement, has standing because it has alleged a concrete injury. *Cf. Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1038–39 (11th Cir. 2008). In *Young Apartments*, for example, the court held a landlord had standing to challenge a local "overcrowding" ordinance on equal protection grounds when the landlord alleged it had suffered a financial injury based on lost rent. *Id.* In this case, the complaint alleges that Petrick has executed an agreement to purchase land and lease it to Tini Bikinis. Consequently, although a closer case than *Young Apartments* as Petrick is not yet the landlord, Petrick nevertheless has standing because of the allegation that the Amended Ordinance causes it financial injury — lost rent. Suppressing speech which Petrick expects to profit from, the Amended Ordinance injured Petrick's finances. It has standing to bring a facial First Amendment challenge to the Amended Ordinance.

**B.**

Defendant next argues that Plaintiffs' Fifth Amendment takings claims should be dismissed for two reasons — ripeness and standing. Specifically, Defendant argues that the claims are not ripe because Plaintiffs have not satisfied either prong of the test set forth in *Williamson*. Def.'s Br. 5–14. And because under Michigan law only the holder of a liquor license has a property interest in it, only Ho-Bo has standing to assert claims related to the license; Tini Bikinis, Fredward, and Petrick "do not have standing to assert any interest in the liquor license or right to its transfer, nor any claim under the Fifth and Fourteenth Amendments related to the License." *Id*. at 16–17. As the ripeness argument is dispositive of the issue, it is taken up first.

The Fifth Amendment enumerates several fundamental rights, concluding in the final clause: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. I. "The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson*, 473 U.S. at 194 (citing *Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 297 n.40 (1981)). Consequently, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id*. at 195.

In this case, Plaintiffs write: "Plaintiffs disagree that there are any state law claims that would permit Plaintiffs to obtain 'just compensation' for the Township's failure to transfer the License, which is the essential basis for the Fifth Amendment takings claim." *Id*. at 12 n.1. Plaintiffs' argument is unpersuasive.

In *Bigelow v. Michigan Department of Natural Resources*, 970 F.2d 154 (6th Cir. 1992), for example, commercial fishermen whose fishing licenses were rendered unusable by a consent decree between Michigan, the federal government, and several Indian tribes brought a takings claim in federal court.  *Id.* at 155–56.  The Sixth Circuit concluded that the claim was not ripe under *Williamson* because "the plaintiffs have not pursued an inverse condemnation remedy in the Michigan courts, although such a remedy could be available."  *Id.* at 158 (citing *Heinrich v. City of Detroit*, 282 N.W.2d 448 (Mich. Ct. App. 1979)).

"An inverse or reverse condemnation suit," the Michigan Supreme Court explains, "is one instituted by a landowner whose property has been taken for public use without the commencement of condemnation proceedings."  *Electro-Tech, Inc. v. H F Campbell Co.*, 445 N.W.2d 61, 75–76 (Mich. 1989) (internal quotation marks omitted) (quoting *Hart v. Detroit*, 331 N.W.2d 438, 441 (Mich. 1982). Michigan law also recognizes a cause of action for inverse or de facto condemnation in "regulatory takings cases."  *Id*.  Indeed, Michigan law has long recognized "that the application of a zoning ordinance to a particular property can constitute an unconstitutional taking."  *Id*. (citing *Spanich v. Livonia*, 355 94 N.W.2d 62 (Mich. 1959)). "Generally, a plaintiff alleging a de facto taking or inverse condemnation must establish (1) that the government's actions were a substantial cause of the decline of the property's value and (2) that the government abused its powers in affirmative actions directly aimed at the property." *Blue Harvest Inc. v. Dep't of Transp.*, 792 N.W.2d 798 (Mich. Ct. App. 2010) (citing *Hinojosa v. Dep't of Natural Res.*, 688 N.W.2d 550 (Mich. Ct. App. 2004)).

Plaintiffs' takings claim in this case is that "[t]he Township's refusal to approve the transfer of the License is a deprivation of Plaintiffs' lawful use of property."  Compl. ¶ 40.  "The Township's purported enforcement of Current Regulations and any enforcement of the Proposed

-27-

Amendment violate Plaintiffs' right to engage in constitutionally protected speech and expression and to engage in lawful occupation," the complaint explains, "and result[s] in the taking of property without due process or just compensation." *Id*. ¶ 52. It elaborates: "The Current Regulations and the Proposed Amendment chills speech by significantly reducing the available land for an 'adult oriented' or 'sexually oriented' business as they are defined, thereby preventing such businesses a reasonable opportunity to open and operate." *Id*. ¶ 34. Thus, Plaintiffs are raising an inverse condemnation claim, contending that Defendant's application of its zoning ordinance constitutes a de facto taking. Because Michigan has created judicial procedures for seeking compensation for such takings, Plaintiffs are required to avail themselves of these procedures before bringing suit in federal court. *Williamson*, 473 U.S. at 194. As it is undisputed that they have not done so, Plaintiffs' Fifth Amendment claims are not ripe for federal attention. The Court will dismiss Plaintiffs' Fifth Amendment claims regarding both the Amended Ordinance and the 2010 Ordinance. Accordingly, the Court does not address Defendant's alternative argument regarding standing.

## C.

Finally, Defendant moves to dismiss Plaintiffs' Fourteenth Amendment claims on the same two grounds as the Fifth Amendment claims — ripeness and standing. "Under Sixth Circuit case law," Defendant writes, "the *Williamson County* ripeness requirements for takings claims also apply to equal protection and due process claims that allege a deprivation of a property right or which are ancillary to a takings claim." Def.'s Br. at 13 (citing *Bigelow v. Mich. Dep't Natural Res.*, 970 F.2d 154 (6th Cir. 1992)). Once again, as the ripeness argument is dispositive of the issue, it is taken up first.

"Takings claims," of course, "whether asserted as just compensation or substantive due process claims, are subject to [*Williamson*] ripeness requirements." *Warren v. City of Athens*, 411 F.3d 697 (6th Cir. 2005). "Procedural due process and equal protection claims that are ancillary to taking claims," the Sixth Circuit also holds, "are subject to the same *Williamson* ripeness requirements." *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002) (citing *Bigelow v. Mich.Dep't of Natural Res.*, 970 F.2d 154, 157 (6th Cir. 1992)). To evaluate whether a claim is ancillary, as noted above, the court "focuse[s] on the circumstances of the specific case — and particularly the issue of when the alleged injuries occurred." *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 572 (6th Cir. 2008). If a claim "addresses a separate injury," it is not ancillary. *Warren v. City of Athens*, 411 F.3d 697 (6th Cir. 2005).

The leading example of non-ancillary claims are procedural due process claims. *See, e.g.*, *Nasierowski Bros., Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 893 (6th Cir. 1991). In *Nasierowski*, the plaintiff's land was rezoned without the required notice or the opportunity to be heard. *Id*. at 892–93. When he brought suit, alleging a procedural due process violation, the district court dismissed his due process claim based on *Williamson*. *Id*. at 893. Reversing, the Sixth Circuit explained: "[the plaintiff's] injuries accrued and attached immediately when Council convened in executive session and materially deviated from the recommendations of the planning commission, thus subverting the purpose of the duly conducted notice and comment process." *Id*. at 894.

In this case, Plaintiffs assert substantive and procedural due process claims, as well as equal protection claims. *See* Compl. ¶¶ 45, 49. Each, however, is ancillary to Plaintiffs' takings claim. Specifically, the complaint alleges: "The refusal of the Township [to approve the license] violates Plaintiffs' substantive and procedural due process rights." *Id*. ¶ 45. Additionally, the

complaint alleges, "[t]he Current Regulations and Proposed Amendment violate the equal protection clause of the Fourteenth Amendment to the United States Constitution by creating and permitting uneven treatment in the exercise of constitutionally protected rights in the State of Michigan by allowing standards to vary from city to city, township to township." *Id*. ¶ 49.

Significantly, however, Plaintiffs do not contend that they were denied notice or an opportunity to be heard. *See, e.g., id*. ¶ 17 ("At the board meeting held on September 13, 2010, the Township board refused to approve Bikini's request for the transfer."). Rather, each of Plaintiffs' Fourteenth Amendment claims — including the procedural due process claim — arises out of the same alleged injuries as the takings claim. As each are ancillary to that claim, each are subject to the *Williamson* ripeness requirements.

## IV.

Accordingly, it is **ORDERED** that Defendant's motion to dismiss and for judgment on the pleadings (ECF No. 13) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Defendant's motion to dismiss Plaintiffs' as applied First Amendment challenges to the Amended Ordinance, as well as Plaintiffs' as applied and facial First Amendment challenges to the 2010 Ordinance is **GRANTED**.

It is further **ORDERED** that Defendant's motion to dismiss the facial First Amendment challenge to the Amended Ordinance brought by Plaintiff Petrick Holdings-Saginaw, LLC, and Plaintiff Tini Bikinis-Saginaw, LLC, is **DENIED**.

It is further **ORDERED** that Defendant's motion to dismiss the facial First Amendment challenge to the Amended Ordinance brought by Plaintiff Fredward of Saginaw, LLC, and Plaintiff Ho-Bo Properties, Inc., for lack of standing is **GRANTED**.

It is further **ORDERED** that Defendant's motion to dismiss Plaintiffs' Fifth Amendment challenge to both the 2010 Ordinance and the Amended Ordinance is **GRANTED**.

It is further **ORDERED** that Defendant's motion to dismiss Plaintiffs' Fourteenth Amendment challenge to both the 2010 Ordinance and the Amended Ordinance is **GRANTED**.

<div style="text-align: center;">

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

</div>

Dated: December 22, 2011

<div style="border: 1px solid black;">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 22, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS

</div>